758 N.W.2d 126 (2008)
2008 WI App 124
James LISTER, Plaintiff-Appellant,
v.
SURE DRY BASEMENT SYSTEMS, INC., Defendant-Respondent,
Rural Mutual Insurance Company and West Bend Mutual Insurance Company, Intervening Defendants.
No. 2007AP838.
Court of Appeals of Wisconsin.
Submitted on Briefs March 4, 2008.
Opinion Filed June 10, 2008.
*127 On behalf of the plaintiff-appellant, the cause was submitted on the briefs of Daniel W. Stevens and Rudolph J. Kuss of Law Office of Daniel W. Stevens, of Milwaukee.
On behalf of the defendants-respondents, the cause was submitted on the brief of James J. Mathie, of Milwaukee.
Before WEDEMEYER, FINE and KESSLER, JJ.
¶ 1 KESSLER, J.
James Lister appeals from an order dismissing his complaint after Lister twice failed to appear for his deposition and then failed to provide a court-ordered physician's report as to his ability to travel to, and participate in, a deposition. We affirm.

BACKGROUND
¶ 2 James Lister filed a complaint on April 28, 2006, alleging that Sure-Dry Basement Systems, Inc. negligently repaired his basement, breached a contract for the same, and violated WIS. ADMIN. CODE chs. ATCP 110 and 111 by misrepresenting that the repairs contracted for and performed would correct the problems in Lister's house. The complaint further alleged that Sure-Dry failed to honor the warranty issued for the work, and that Sure-Dry "knew or should have known that it had no intention of honoring the warranty." Sure-Dry filed its answer on June 21, 2006, denying all of the allegations.
¶ 3 In June 2006, West Bend Mutual Insurance Company moved to intervene for a declaration as to its rights, duties and obligations under its insurance policies issued to Sure-Dry. By letter dated July *128 12, 2006, Rural Mutual Insurance Company filed a stipulation and order to intervene in this action for the "purpose of determining any rights, responsibility and/or coverages pursuant to polices of insurance issued to [Sure-Dry]." On July 20, 2006, the trial court signed the order allowing intervention and also ordered a stay regarding the merits of Lister's complaint until such declaration had been made by the trial court. By stipulation and order dated September 8, 2006, West Bend was allowed to intervene and the trial court also granted West Bend's motion for stay and bifurcation, staying proceedings on liability "pending discovery on and the resolution of insurance coverage issues."
¶ 4 A status conference was held on October 5 and thereafter Lister's deposition for coverage purposes was scheduled for November 2, 2006, in Oshkosh. Lister's counsel forwarded the notice of deposition to Lister and attempted to reach him by telephone prior to the deposition date. Lister did not appear for the November 2 deposition. Because of the short briefing schedule on the motions for declaratory judgment on coverage, due in part to the holidays, the trial court held a telephonic hearing on November 13 regarding Lister's failure to appear at the noticed deposition. The trial court determined that if Lister failed to appear at a second scheduled deposition (on November 27, 2006), it would entertain a motion to dismiss Lister's complaint.
¶ 5 Lister continued to fail to communicate with his counsel following the November 13 hearing, even after his counsel left voicemail messages on his telephone, mailed information regarding the deposition to him at his home address and unsuccessfully attempted, through a process server, to serve Lister with a subpoena for the November 27 deposition. On the Friday before the scheduled Monday deposition (the Friday following Thanksgiving), Lister's counsel again left a voicemail message regarding the upcoming deposition and this message was returned that same day by Lister's wife. During this call, Lister's counsel was advised for the first time that Lister had been in Mexico receiving treatment for bladder cancer from early September through the previous week. Lister was treated in Mexico by his stepson, John Humiston, M.D., a physician licensed to practice in California whose practice includes a cancer clinic in Tijuana, Mexico. Lister's wife also informed counsel about medical problems Lister encountered in July and August (including his need to stay on life-support through the end of August) and said that because of Lister's reliance on a portable oxygen tank that contained only three hours of oxygen, Lister would be unable to attend the November 27 deposition. Lister, however, had driven in his van to and from Mexico, a three-day journey one way.
¶ 6 Lister's counsel immediately attempted to contact counsel for Sure-Dry, both at his office and at his home, as well as counsel for West Bend, to inform them that Lister was unable to attend the Monday deposition. When he was unable to reach them, Lister's counsel faxed letters to their offices requesting that the deposition be rescheduled due to Lister's health problems. On Sunday, Lister's attorney listened to a voicemail message left by Lister and thereafter that same day, faxed a second letter to counsel informing them that due to Lister's condition, the deposition would need to be at Lister's home.
¶ 7 After Lister failed to appear for this second deposition in Oshkosh, Sure-Dry filed a motion to dismiss with the trial court on November 29, 2006. At the December 5, 2006 hearing on Sure-Dry's motion *129 to dismiss, the trial court ordered that Lister provide a physician's report stating:
By 12-15, you will have some documentation as to your client's condition as to why he can't travel to deposition in Oshkosh.
....
So I'm looking for something from a doctor that states that he cannot travel to Oshkosh because of this, this and this, you know, he cannot.
....
[I]f there's any type of limitations on Mr. Lister's deposition, then the doctor has to set it forth.... [I]f he has some limitations, they have to be put forth by a medical doctor in that letter.
The trial court noted that this physician report should be from a non-related physician and that since Lister had been under treatment for cancer since 1999, and required constant oxygen, he must have a physician in the Milwaukee area who could provide this information. The trial court further noted that because the sanction of dismissal had been discussed at the November 15 hearing as a sanction for Lister's nonappearance at a properly noticed deposition, Lister had to pay the attorney fees incurred by Sure-Dry's counsel to file and come to the hearing on the motion to dismiss, which were determined to be $1350 ($225 per hour for six hours).
¶ 8 Lister's counsel requested that Lister have two weeks, rather than one, to obtain a report from a local physician regarding his need for oxygen and his corresponding inability to travel to Oshkosh for a deposition. On December 11, 2006, Lister's counsel wrote to the trial court and counsel informing them that Lister had not seen a local physician since his return from Mexico and, therefore, no physician was available to state that Lister was unable to attend the deposition on November 27. This, however, was not what the trial court had ordered. Because Lister had failed again to provide the court with the information ordered regarding his health and limitations, the trial court dismissed Lister's case with prejudice, finding that from his actions, Lister was no longer interested in prosecuting this case, and that from his previous failures to make himself available for deposition, there was no guarantee that he would appear[1] even if a deposition was rescheduled.
¶ 9 Lister then filed a motion for reconsideration, attaching letters from Dr. Humiston regarding the time that Lister was in Mexico pursuing additional medical protocols in treatment of his bladder cancer. *130 The trial court found that these additional letters were insufficient to meet the standard for bringing a motion for reconsideration, i.e., presenting newly discovered evidence or establishing a manifest error of law or fact, and denied the motion. Lister appeals.

DISCUSSION
¶ 10 We review a trial court's imposition of sanctions under an erroneous exercise of discretion standard. Industrial Roofing Servs. v. Marquardt, 2007 WI 19, ¶ 41, 299 Wis.2d 81, 726 N.W.2d 898. This includes the "decision of which sanctions to impose, including dismissing an action with prejudice." Id. We will sustain a trial court's discretionary decision if it "`has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" Id. (citation omitted).
¶ 11 Sanctions are appropriate if the party acted egregiously. See Garfoot v. Fireman's Fund Ins. Co., 228 Wis.2d 707, 719, 599 N.W.2d 411 (Ct.App.1999) (failure to comply with court scheduling and discovery orders without clear and justifiable excuse is egregious conduct). Dismissal of an action with prejudice can be an appropriate sanction for egregious conduct. Industrial Roofing Servs., 299 Wis.2d 81, ¶ 43, 726 N.W.2d 898.
Specifically, WIS. STAT. § 804.12(2)(a) and § 805.03 limit the sanctions that circuit courts may impose for failure to prosecute and for failure to comply with court orders to those that are "just."[2] Wisconsin courts have interpreted this limitation to mean that dismissal requires that the non-complying party has acted egregiously or in bad faith. "[F]ailure to comply with circuit court scheduling and discovery orders without clear and justifiable excuse is egregious conduct." Where the circuit court finds that failures to respond to discovery and follow court orders are "extreme, substantial, and persistent" it may dismiss the action with prejudice on the grounds that the conduct is egregious.
Industrial Roofing Servs., 299 Wis.2d 81, ¶ 43 & n. 7, 726 N.W.2d 898 (citations omitted; footnote in original); see also Garfoot, 228 Wis.2d at 719, 599 N.W.2d 411; Johnson v. Allis Chalmers Corp., 162 Wis.2d 261, 273, 470 N.W.2d 859 (1991), overruled on other grounds by Industrial Roofing Servs., 2007 WI 19, 299 Wis.2d 81, 726 N.W.2d 898.
¶ 12 In this case, Lister filed a complaint against Sure-Dry in April 2006 and Sure-Dry filed an answer on June 21, 2006. Shortly thereafter, West Bend and Rural insurance companies moved for intervention and a status conference was scheduled for September 8, 2006. Lister has not argued that he was not receiving communications from his attorney during this time period regarding these events. Lister also does not argue that he communicated with his attorney regarding his health crisis in July and August, or that he informed his counsel that he was leaving the country for *131 treatment in Mexico from early September through mid-November. It is clear from the record that Lister's counsel was unaware of Lister's unavailability when counsel agreed, at the October 5 status conference, to produce Lister for a deposition within the following month. It is also clear from the record that Lister did not immediately contact his attorney when he returned from Mexico. Rather, it was only after his attorney left him a voicemail message on November 24 regarding the November 27 deposition, that Lister's wife telephoned Lister's counsel and informed him that Lister would not appear at the November 27 deposition and that he was unable to attend any deposition in Oshkosh because of his need for oxygen and the three-hour limit of his portable oxygen tank.
¶ 13 After Lister's counsel advised the trial court during the December 5, 2006 hearing that Lister was medically unable to travel to Oshkosh for his deposition due to his portable oxygen circumstances, the trial court, aware of Lister's ability, one week before the scheduled deposition, to travel by road for three days from Mexico back to Milwaukee, ordered that Lister, by December 15, provide medical documentation from a physician in the Milwaukee area, not his stepson, regarding Lister's medical condition and ability to be deposed. Lister failed to provide the court with this documentation[3] or to provide any documentation as to why he could not travel to Oshkosh for a deposition. Based on Lister's conduct throughout the course of the litigation, and in light of the fact that Lister was aware that the trial court would likely dismiss his complaint if he did not provide this information, but Lister still failed to do so, the trial court found that Lister's failure to keep his counsel informed of his whereabouts and failure to appear at his deposition twice, indicated that Lister was not serious about pursuing his rights in this case. The court further found that it was "not appropriate to keep these insurance companies and to keep Sure-Dry Basement in as a defendant when the plaintiff doesn't have too much interest in this lawsuit." Based on these findings, the trial court dismissed Lister's complaint with prejudice for failure to prosecute and to comply with the court's orders.
¶ 14 From our review of the record, we determine that the trial court properly exercised its discretion. The findings are not clearly erroneous, the proper law was applied to those facts, and the trial court reached a rational conclusion. See Industrial Roofing Servs., 299 Wis.2d 81, ¶¶ 41, 43, 726 N.W.2d 898.
Order affirmed.
NOTES
[1] Specifically, the trial court noted:

[Sure-Dry's counsel] attempted to depose Mr. Lister not once but twice. Mr. Lister failed to appear not once but twice.
The court was advised that Mr. Lister couldn't come to the deposition because he has limitations on his travel ability. I gave him the benefit of the doubt and I said give me a doctor's letter that says you can't travel.... I received nothing.
....
[Lister] is the plaintiff. He has to pursue this matter.... He left ... the country. His attorney did not know where he was, and I understand he's back in the country but he had left without telling [his counsel] where he was.
[I]f Mr. Lister wanted to pursue this matter he could have pursued this matter. To me it does not appear he really wants to pursue this matter. He has failed to appear at deposition not once but twice.
There's no indication ... that Mr. Lister is serious about this matter and he's actively pursuing his rights. He's failed to do so.
It's not appropriate to keep these insurance companies and to keep Sure Dry Basement in as a defendant when the plaintiff doesn't have too much interest in this lawsuit. I am dismissing the case with prejudice.
[2] Under WIS. STAT. 804.12(2)(a) "If a party ... fails to obey an order to provide or permit discovery, [the court] may make such orders in regard to the failure as are just, [including]... dismissing the action." Section 805.03 provides:

For failure of any claimant to prosecute or for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of the court, the court ... may make such orders in regard to the failure as are just, including ... orders authorized under § 804.12(2)(a).
Industrial Roofing Servs. v. Marquardt, 2007 WI 19, ¶ 43 n. 7, 299 Wis.2d 81, 726 N.W.2d 898 (ellipses and brackets in Industrial Roofing Services).
[3] From the record, it does not appear that Lister has ever provided this information.